All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. Good morning. We have three argued cases this morning. First of these is number 2012-71-20, Stephen Yonek v. Shinseki. Mr. Kliber. Thank you, Your Honor. Good morning. The issue in this appeal concerns the interpretation of a regulation and particularly whether a veteran may obtain two separate disability ratings under D.C. 5201 for limitations of flexion and abduction of the same shoulder. The Veterans Court held that under Cullen and Burton, a veteran cannot obtain separate disability ratings. But that ruling failed to address the illustrations of Plate 1 and also conflicted with the controlling decisions of Amberman and Esteban. The ruling also did not correctly apply the governing regulations including 38 CFR 4.45 and 4.25. And for these reasons, we submit that the ruling should be reversed. Well, if these other regulations specifically mention separate ratings for flexion and abduction, why does that suggest that this one was intended to have a different result and not to treat those two separately? Well, Your Honor, the regulations are structured differently. It's really not a uniform approach. Some of the regulations are very specifically tailored in the regulation itself. But 5201 has broader language in the regulation, but then refers back essentially to Plate 1, which contains specific illustrations and... Well, I don't think you're really responding to my question. Some of these other regulations do contemplate separate ratings for other joints for flexion and abduction, right? And this one doesn't have that language in it. So don't we draw some conclusion from that? Well, I think those regulations are written differently, essentially. They're written very specifically. That's the point. Yes. The fact that they're written differently suggests that maybe that this regulation not being written that way was intended to give a different result. I think you could read it that way without Plate 1. But with Plate 1, you have two very specific motions of flexion and abduction, which we submit are two separate disabilities. 5215 is another regulation that was mentioned in the Boone case, where that was a regulation where two separate disabilities, the Veterans Court found, could be assigned under that single code. So we submitted a similar situation here. We have broader language that says limitation of motion. But then when one looks to the plate, we have the very specific illustrations showing these two non-overlapping motions, which under Esteban, we submit should be separately ratable disabilities. I think neither one of you discusses the question of our deference to the VA's interpretation of the regulations, which has come up in some past cases. Yes, Your Honor. Is there a VA interpretation of this to which we should defer? Well, I would say first that the Veterans Court did not rely on any VA interpretation in the decision under review. You let it stop us, right? That's true. The VA, in its brief, Your Honor, actually acknowledges that Plate 1 must be used to understand 5201. In fact, they refer at page 12 of their brief to Plate 1 as defining the meaning of at shoulder level in 5201. So we submit that the VA is in agreement with the importance of using Plate 1 to understand the scope and meaning of 5201. In addition, there's the VA General Counsel Opinion 9-2004 that does follow Esteban. And we submit that's consistent with our position because in that General Counsel Opinion, the VA has a position that even when you have injuries or disabilities in the same plane in a leg, they found that those could be properly assigned. But again, going back to Judge Dyke's original question really, the VA Counsel Opinion, which I have right here, was based on two different diagnostic codes, 5260 and 5261, because again, this was one of the sections in the regs that expressly differed as between flexion and extension and therefore had two different codes recognizing those as two different things. I guess the problem I see is logically you're making an excellent argument for somebody ought to go modify the regs and make them internally consistent. Maybe there are legitimate reasons to do that, but that's not our role. And the difficulty I'm having is there's only one code for movement. And I guess I'm finding it difficult to conclude. Maybe you ought to explain to me in more detail why it is precisely that you believe that Plate 1 tells me I ought to effectively expand 5201 into two separate diagnostic codes. Well, Plate 1 shows two non-overlapping motions. And there's no question about that. Flexion, for example, would be someone reaching up to open a kitchen cabinet, for example. Abduction would be, for example, sideways to hold a suitcase. But 5201, for whatever reason, was written generally limitations of motion. It doesn't seem to be particular to side versus front. That's true. It has broader language, just like 5215 does. 5215 also says limitations of motion as to the wrist. But the Boone Court found that those could be separately ratable. And, in fact, that there could be four separate ratings based in large part on the plates, which show non-overlapping motions. Based on large part on the plates or separate diagnostic codes? Well, in Boone, the Court relied in part on 5215, which was a single diagnostic code that the Court acknowledged could cover two motions based on Plate 1. So it wasn't simply based on the codes. The other thing I want to mention... You need Plate 1 anyway to explain that you can get a rating under 5201 for either flexion or abduction, right? So it's an appropriate plate for that purpose. But why does, as Judge you could have separate ratings for the two kinds of motion? Well, I think one of the other key regulations is 4.25. Now, 4.25 provides that... Before you leave the plate, wasn't there an earlier case that dealt with the question whether you had to show a limitation in both abduction and flexion based on the plate? Yes. Yes, Your Honor. The VA originally took the position that this regulation only covered, I believe it was abduction. I could have that reversed. Only covered one of the two motions. And that was reversed. And that was... I guess, yeah, they held it was overly restricted interpretation. You can't win unless you've got limitation in both motions because the plate shows two motions. And they said, no, the plate shows two different motions. And so long as you have disability in one or the other, you can still prevail. That's correct, Your Honor. And they remanded that case back to the VA for a less restricted interpretation of 5201. Can I just add one other point and then I'll let you go on? Is your position here in any way materially different from the brief that was filed in the Burton case? I mean, your firm was counseled in Burton on that appeal. I think the issue in Burton, there was a jurisdictional issue there. There were different issues. I think it was the same question, whether or not you can have under this particular 5201, you can have two disabilities. I believe that's correct. And the court did not... I'm not holding against you. I mean, that case was affirmed. But my understanding was that essentially the same arguments that you're making today were made to the court about a year ago. Yes, Your Honor. You cited Boone to us. Refresh my recollection. My recollection is that it's a non-PREC veterans case, right? Veterans court case. I believe that the reasoning of that case is not crystal clear to me, quite frankly, having read it. But it could certainly be argued to support your position. Of course, we're not bound by that. Absolutely. But are you representing that it somehow exists as a posture of the VA that we would have to give deference to? Judge Dyke was asking you questions about deference to the association and its interpretation of its regulations. Do you believe that that veterans court case, non-precedential as it is, is nonetheless an interpretation of a regulation that we have to give deference to? Well, I think it's useful for its reasoning, primarily. But we don't give deference to veterans court decisions under our, right? No, Your Honor. It's really the reasoning there. And the reasoning following Esteban and finding there were four separate disability ratings that were appropriate for the four different non-overlapping motions of the wrist, based in part on 5215, which itself had two within that one disability code. So the reasoning, I think, is relevant. Another point I wanted to make on this sort of counting the codes issue is the Amberman case itself. Now, in Amberman, recall that the veteran there was seeking two disability ratings for post-traumatic stress disorder and affective bipolar disorder. But the record showed a complete overlap of the symptoms of those two disorders. And as a result, this court affirmed the denial of two separate disability ratings. One thing that's interesting, though, is that those two disorders actually fell under two disability codes, 9411 and 9432. The opinion itself refers to 4.130, but you can see those two codes there. So despite there being two disability codes at issue, the court found a single disability based on the overlapping symptomatology rather than based on the number of codes. Another regulation that's relevant is 4.45. Now, 4.45 is specific to the joints, and it provides that for disabilities of the joints, the factors of disability reside in reduction of their normal excursion in different planes, flexion and abduction of movements in different planes. And therefore, we submit that limitations of these distinct movements should be considered separate disabilities consistent with 4.45. The court here did not address Esteban or Amberman or Plate I or 4.25 or 4.45. We think those are the core legal authorities that the court should have analyzed and reached a different result. I'll reserve my remaining time for rebuttal unless the court has other questions. Okay. Thank you, Mr. Fleming. Ms. Hogan? Good morning, Your Honors. May it please the Court? Why don't you argue for our deference? There's the Smith case where we suggested that our deference would apply in this context and might even apply to a position taken in the brief on appeal. Well, that's not so clear in a lot of recent Supreme Court cases. But why is it that you don't argue for our deference? The primary reason is because we believe that the regulation is plain on its face, so the court doesn't have to resort to the deference it would normally have to resort to if the regulation was ambiguous. Yeah, but if you were to lose on that, you're kind of at seak. Well, I think we certainly have reserved our right to argue deference in our briefing. I mean, we do discuss our deference, and certainly it would be applicable even if the position was first taken in litigation. This is a position that's been consistent in this case, in Burton. There's no contrary position that the VA has taken in this case, and it's certainly a reasonable interpretation of the diagnostic code. Is it the only interpretation that's been taken in the course of litigation? I'm not aware of any interpretation of this particular diagnostic code that was outside of litigation. But certainly, I think that the VA general counsel opinion that discusses a different diagnostic code certainly supports our position, because again, we're dealing with two separate diagnostic codes that permitted ratings for different limitations of motion in two different planes, whereas in this diagnostic code, there's no distinction. It's the limitations of movement of the arm without regard to whether it's flexion or abduction. It can be either. The plate 1 that Mr. Yonick relies upon certainly does provide guidance to the rating specialist on how to measure limitations of movement. And in fact, on 4.71, simply what it says is that it provides a standardized description of joint motion measurement. It certainly does not indicate or alter the actual diagnostic code criteria in any of the diagnostic codes. So it's simply a way to make sure that rating specialists are consistently measuring limitations of motion and making sure that they look at both flexion and abduction, but there's certainly nothing in there that would require two separate ratings under the same diagnostic code. Are there other cases currently pending that you're aware of that are hinging on either below or for our court hinging on the issue of whether a single diagnostic code can give rise to multiple disability rating? I'm not aware of any cases, Your Honor. I certainly think that that's a question that whether you can get two separate ratings for a single diagnostic code is something that's already been addressed by the Veterans Court and found that unless there's an explicit express statement in the particular diagnostic code, it's not available. And that was in Colon and in Burton. This is simply a corollary of the... I think there were a couple of cases that came before us and we 36ed them, which doesn't, if I remember right. So there is nothing from our court that definitively says that as finding precedent, but it's still being raised, obviously, in the Veterans Court, despite the Veterans Court's position on it. It certainly is being raised. It is not, we believe, an issue that is... We believe it's an issue that's already been cited by the Veterans Court. The... The question is, are we going to see more of these cases if we don't resolve this one way or the other in a precedential opinion? As I said, Your Honor, I'm not aware of any cases. I certainly don't know that this is a hot topic. Well, they've come up in the past. It has come up in the past. The very issue that's in front of this case was in front of us a year ago in Burton. And we've got a party who's back after giving us some reaffirmance. It suggests that we probably ought to... He would want us to close this door. But it's not necessarily so. I mean, you have the CABC has said, well, as a general, the cases they have seen where they were seeking two ratings within a single diagnostic code, they said no. But those that we know which pieces of the system they've looked at, you could have an entirely different system. You could have this plate number one with some language in it describing it. It would substantially enhance your adversaries' case and minimize yours. So we don't know where the next case may come from. A decision in this case won't necessarily end forever. An argument that could be made that you could get two ratings within a single code. It would depend on what's in the nature, what's in the code. It's certainly specific to the particular diagnostic code. And just in this case, of course, Burton did address precisely the same diagnostic code and the same question. Until such a time as the diagnostic code is amended, this case would take care of shoulder dislocation problems. You mean? Right. I think that's correct, Your Honor. Just to briefly address the argument that the Veterans Court didn't address Esteban, the Esteban case dealt with one injury that resulted in three separate impairments that were separately rated under three separate diagnostic codes. We believe that that is a distinguishing factor between that case and this case. The Boone case, again, I think the Court's correct. It is a non-presidential opinion and it's not particularly clear about its reasoning, but I think it is worth pointing out that the issue of the wrist is rated under separate diagnostic codes for the various movements in the different planes. But, again, that's a relevant distinguishing factor between Boone and the particular diagnostic code in that case and this case. And, finally, let me simply address CFR 38.4.45, which, again, provides generic guidance on how to evaluate all types of joints. It's not specific to the limitation of the shoulder. So the rating specialist still has to go back to that particular rating code and consider what the rating criteria of that diagnostic code is. And if the Court has no further questions, we would respectfully request that the Court affirm the decision of the Veterans Court. Thank you, Ms. Hager. I just wanted to go back and emphasize 4.45 is important, but 4.25 I think is really critical here. 4.25 provides that a single disease entity may give rise to multiple disabilities and except as otherwise provided, they are to be rated separately. So Esteban is an example of that, where Esteban had a single facial injury that gave rise to three disabilities and they had to be rated separately. The VA knows how to override that presumption. So that's a regulatory presumption of separate disability ratings. For example, in DC 5235 to 5246, Note 6, that provides that certain spinal disabilities are rated separately except that unfavorable ankylosis of both segments is rated as a single disability. And that's cited in our reply brief at page 4, Note 1. So that's what the VA has to do to overcome the presumption of separate ratings for separate disabilities under 4.25b. If they don't do that with express language in a note or in the regulation, the presumption of the regulation of their own regulation is that there have to be separate ratings for separate disabilities. So here the 5201 does not state that the two disabilities illustrated in plate 1 should be given only one rating. They haven't said that in a note or in the language of the regulation. And therefore, under 4.25, they must be rated separately. And that's exactly what Esteban held, the same analysis. If you're right about the strength of the presumption coming out of 4.25, then there's going to be multiple ratings within single diagnostic categories unless there's some explicit overruling of the presumption. Is that what you're saying to me? I think you have to look at each regulation individually. Cullen, for example, was a different situation. Cullen was seeking two ratings for a single spinal disability. And in Cullen, the ratings were essentially a sliding scale, and he was trying to get two, 40% and 20%. That's a different issue. You're not giving up your position right into where the presiding judge was talking originally because he said there are regulations out there that talk about flexion and abduction, so that we know that the secretary knows how to name both if they want to have separate awards. And the way I understood the presiding judge was looking at the regulation, as you suggested, he was saying, well, the secretary has shown us that at least with disabilities involving flexion and abduction, he knows how to give duels, and he didn't do it here. Well, they've structured this particular regulation differently. They've used broader language in the regulation, and then very specific language in the two separate diagrams that accompany it. And the VA is not disputing that 5201 has to be interpreted in light of those two illustrations, and that a veteran can get a rating for flexion or abduction if they meet either one. And if someone has both, we submit that those are two separate and non-overlapping disabilities under Esteban. Colin, as I said, there was pyramiding in Colin because Colin was seeking two ratings for one spinal disability. That's not what we're seeking here. Your whole case hinges on Plate 1, right? You're not saying in answer to Judge Klobuchar's question, as I understand it, that in the absence of something like Plate 1, any single diagnostic code could give rise to multiple different, vis-à-vis your presumption, could give rise to multiple different disabilities that would have to be separately compensated. That's correct. You're saying Plate 1 is the thing that changes that here. Exactly. If Plate 1 only had an illustration of abduction, for example, then it could be that 5201 would be more narrowly construed. But it doesn't. It has illustrations of both separate movements, and for that reason we submit they should be viewed as separate disabilities. They should be separately rated. There was also a mention of the burden decision. We'll just say that there's no analysis in the burden decision of Esteban or Amberman or Plate 1 or anything. And in fact, as the Court acknowledged, the issue of separate ratings was not even argued or briefed or decided by the Board in that case. We don't think the burden case is of any value to this Court in resolving this issue. Okay. I think we're out of time. Thank you, Mr. Fullert. Thank you. Case is submitted.